UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ARDAMIS DARRELL SIMS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 17 C 79 |
| v. | ) ) | Chief Judge Rubén Castillo |
| RONALD OLSZEWSKI, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Ardamis Darrell Sims ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Chicago Police Officers Ronald Olszewski, Detective Daniel Freeman, Sergeant Janet Comiskey, Lockup Keeper Patrick Ashe, and Detention Aide Joseph Palmsone (collectively, "Defendants") for violations of his Fourteenth Amendment rights. (R. 5, Am. Compl.) Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 13, Mot.) For the reasons set forth below, Defendants' motion is denied.

## RELEVANT FACTS

In early 2015, Plaintiff was a pretrial detainee at Cook County Jail in Chicago, Illinois. (R. 5, Am. Compl. ¶ 4.) On January 6, 2015, Plaintiff took a shower at the Jail in the morning, using the opportunity to wash his underwear and socks, including a long-underwear top and bottom pieces. (*Id.* ¶ 9.) These were Plaintiff's only articles of underwear. (*Id.*) Plaintiff alleges that he hung this clothing up to air-dry, as this was the only drying method available to him, and that this process usually took many hours to dry clothing. (*Id.*) Meanwhile, Plaintiff wore his prison-issued shirt and pants with shower shoes. (*Id.*)

Shortly thereafter, Plaintiff alleges that a correctional officer informed him that he would have to leave the Jail for a court appearance, although Plaintiff protested that his next court date was not until January 16. (*Id.* ¶ 10.) Further, Plaintiff allegedly informed the officer that his undergarments were wet and that the weather that day was very cold. (*Id.* ¶ 11.) The officer persisted, and when Plaintiff continued to question being taken out of the Jail under those circumstances, Plaintiff alleges that he was sprayed with mace by an officer before being put into handcuffs and taken to a holding cell. (*Id.* ¶ 12.)

Despite Plaintiff's repeated protests that he could not go outside in such cold weather due to his lack of undergarments and proper clothing, Plaintiff alleges that Defendants Olszewski and Freeman made him go outside and walk to a police vehicle. (*Id.* ¶ 13.) Plaintiff alleges that he was wearing only his uniform with no undergarments, open shower shoes, socks, and a jacket that was too small with a broken zipper, leaving the jacket open and much of Plaintiff's upper body unprotected from the cold. (*Id.*) Defendants Olszewski and Freeman allegedly made Plaintiff walk approximately 200 feet through slushy ice water to a police sedan, causing his feet and socks to become wet due to his open shower shoes. (*Id.* ¶ 14.) Plaintiff alleges that the temperature that day had fallen below zero degrees Fahrenheit.[1] (*Id.* ¶ 16.) Defendants Olszewski and Freeman allegedly told Plaintiff "not to worry and that he will thaw out when he got to the police station." (*Id.* ¶ 17.)

---

[1] Defendants repeatedly cite historical weather data to suggest that the temperatures never fell to the temperatures alleged by Plaintiff on the days in question. (*See* R. 13, Mot. at 2 n.2; *id.* at 3 n.3.) Defendants cite Federal Rule of Evidence 201 to suggest that this Court may take judicial notice of facts that are not subject to reasonable dispute. (*Id.* at 2 n.2.) Although this Court can take judicial notice of public records when ruling on a motion to dismiss, *White v. Keeley*, 814 F.3d 883, 885 n.2 (7th Cir. 2016), the Court observes that the temperature readings cited by Defendants were taken at Midway International Airport, approximately five miles from the Jail. As temperatures may vary in different areas, the Court declines to use this data to reject Plaintiff's own account of the temperature when considering this motion to dismiss. The Court thus takes Plaintiff's facts as true at this stage.

2

After being placed in the back seat of the police sedan, Plaintiff claims that Defendants Olszewski and Freeman "refused to turn the heat on until just before the vehicle arrived at the destination" even though he had been "crying" and "pleading" for them to turn on the heat, and he had told them that he was losing feeling in his feet. (*Id.* ¶ 18.) After arriving at the police station to which he was taken, Plaintiff alleges that he was placed in a cold cell where he spent the rest of the day and the night. (*Id.* ¶ 20.) He claims that he was given no additional clothing or blankets and that cold air was blowing on him. (*Id.*) Although he complained during each shift, he states that he was told that he would not be there long and that Defendants Ashe, Comiskey, Palmsone, and John Does failed to provide heat and suitable clothing. (*Id.*) Although Plaintiff had been told by Defendants Olszewski and Freeman that he would participate in a line-up, no line-up took place. (*Id.* ¶ 21.)

On the morning of January 7, 2015, Defendants Olszewski and Freeman transported Plaintiff back to the Jail. (*Id.* ¶ 22.) Plaintiff alleges that he told them that he had been cold all night, as he was still wearing the same clothing, and that the officers "discussed how the holding cell at the police station in which [P]laintiff had been held overnight was much cozier than the police car." (*Id.* ¶ 24.) One of the officers allegedly stated that, "if he had remembered [P]laintiff after he had eaten his hot soup at home, he would have stopped and picked up some ice-cream for the [P]laintiff to cheer him up." (*Id.* ¶ 25.) Plaintiff claims that Defendants Olszewski and Freeman made him walk outdoors and into the Jail without suitable clothing again, although the weather was nearly as cold as the day before. (*Id.* ¶ 23.)

## PROCEDURAL HISTORY

Plaintiff initially filed a *pro se* complaint in case number 15 C 7524 on August 26, 2015. (No. 15 C 7524, R. 1.) On September 22, 2015, this Court granted Plaintiff's motion for leave to

3

proceed *in forma pauperis* and dismissed the complaint with instructions to file an amended complaint. (*Id.*, R. 6.) Plaintiff filed his amended complaint on October 28, 2015. (*Id.*, R. 9.) On December 2, 2015, the Court granted Plaintiff's motion for attorney representation and recruited an attorney to represent him. (*Id.*, R. 11.) The Court also found that Plaintiff's amended complaint contained several unrelated claims and cautioned him that these claims would have to be pursued in separate lawsuits. (*Id.* at 2.) The Court dismissed the amended complaint without prejudice to appointed counsel filing an amended complaint. (*Id.*) On March 25, 2016, Plaintiff's court-appointed counsel filed a motion to withdraw, explaining that he had functionally retired from the practice of law, had taken no steps to pursue Plaintiff's case, and was not situated to effectively represent Plaintiff. (*Id.*, R. 15.) On the same day, the Court granted counsel's motion and appointed Plaintiff's current counsel. (*Id.*, R. 17.)

Plaintiff filed his complaint in the current case on January 5, 2017, listing Superintendent Eddie Johnson and several John Does as defendants, (R. 1, Compl.), and an amended complaint on January 9, 2017, adding the individually named Defendants who are set forth in the caption of this case, (R. 5, Am. Compl.). On April 26, 2017, in response to Defendants' motion, (R. 23), this Court dismissed Superintendent Johnson without prejudice as the events at issue had preceded him becoming Superintendent. (R. 26, Order.)

Defendants filed a joint motion to dismiss pursuant to Rule 12(b)(6) on March 8, 2017. (R. 13, Mot.) Defendants first argue that Plaintiff's claims actually sound under the Fourth Amendment, not the Fourteenth Amendment, since he had not yet had a judicial determination of probable cause regarding the case for which he had been brought to the police station. (*Id.* at 6.) Second, Defendants argue that Plaintiff has failed to allege sufficient facts to sustain a claim under either standard. (*Id.* at 5-7.) Third, Defendants contend that Plaintiff's amended complaint

4

is only timely as to the named Defendants and not as to any potential John Doe Defendants.[2] (*See* R. 21, Reply at 6-7.)

Plaintiff responded to the motion on March 16, 2017. (R. 16, Resp.) Plaintiff argues that the Fourteenth Amendment applies to his claims, as he was a pretrial detainee when the events in question happened, but that he has alleged sufficient facts to state a claim under either legal theory. (*Id.* at 2-9.) Regarding the statute of limitations, Plaintiff argues that the statute of limitations was tolled as the Court conducted a preliminary screening of the complaint and that, even if not timely as to the John Doe Defendants, the Amended Complaint relates back to the original complaint under Federal Rule of Civil Procedure 15. (*Id.* at 9-15.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation and internal alteration omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion under Rule 12(b)(6), the Court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of [the] plaintiff." *Hill v. Serv. Emps. Int'l Union*, 850 F.3d

---

[2] Defendants initially argued that Plaintiff's Amended Complaint, in which he first identified the named Defendants, was filed outside the two-year statute of limitations for Section 1983 cases in Illinois. (R. 13, Mot. at 8-11.) The Amended Complaint was filed on January 9, 2017, while the latest underlying event occurred on January 7, 2015. Defendants now concede that the Amended Complaint is timely as to the named Defendants, as it was filed on the first business day after the statute of limitations ran, which occurred on a Saturday. (*See* R. 16, Resp. at 9-11; R. 21, Reply at 6.)

5

861, 863 (7th Cir. 2017) (citation omitted). The Court may consider allegations in the complaint, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ANALYSIS

### I. Plaintiff's Claims

In their motion, Defendants argue as a preliminary matter that Plaintiff's claims are governed by the Fourth, not the Fourteenth, Amendment. (R. 13, Mot. at 6.) Defendants rely on the simple statement that "[c]laims regarding conditions of confinement for pretrial detainees such as Plaintiff in this case, who have not yet had a judicial determination of probable cause (a *Gerstein* hearing), are governed by the Fourth Amendment." (*Id.*) Although Plaintiff was a pretrial detainee in the Cook County Jail for some time prior to January 2015, Defendants argue that he "was transported to the police station by Defendant Officers as part of their investigation on unrelated charges against Plaintiff" and "because he had not yet had a probable cause determination/*Gerstein* hearing *regarding the charges for which he was taken to the police station*," he was for all intents and purposes an "investigatory detainee." (R. 21, Reply at 2 (emphasis added).) Because "Plaintiff was in a period of confinement between arrest and his probable cause determination," Defendants argue that the Fourth Amendment standard applies to the conditions of his detention under *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). (R. 21, Reply at 3.) Plaintiff argues that, because he was under custody as a pretrial detainee when the events in question occurred, the Fourteenth Amendment standard applies. (R. 16, Resp. at 7.)

As one moves through the criminal justice system, the constitutional provisions governing one's treatment shift. In particular, "the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (citation omitted). In *Lopez*, the U.S. Court of Appeals for the Seventh Circuit described the boundary between when a Fourth-Amendment arrestee becomes a Fourteenth-Amendment detainee:

> The Fourth Amendment protects against unreasonable seizures; an arrest is a seizure, and the Fourth Amendment affords persons who are arrested the further, distinct right to a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. The judicial determination of probable cause may be made before the arrest (in the form of an arrest warrant) or promptly after the arrest, at a probable cause hearing (sometimes called a *Gerstein* hearing). But whether the arresting officer opts to obtain a warrant in advance or present a person arrested without a warrant for a prompt after-the-fact *Gerstein* hearing, the Fourth Amendment requires a *judicial* determination of probable cause.

*Lopez*, 464 F.3d at 718-19 (internal citation and quotation marks omitted). The distinction between an arrestee and a pretrial detainee, then, is not simply whether a *Gerstein* hearing has been held. Instead, the defining moment is when the government has made a sufficient showing to justify holding the accused for an extended period. As the court acknowledged in *Lopez*, a *Gerstein* hearing is not even required if the police secured a warrant prior to the arrest. The question is not precisely whether any particular event has happened in the specific case in question; it is whether the government has shown that it has probable cause to detain the accused. Before the government has met this threshold, the Fourth Amendment applies. After it has shown that it may detain him, the Fourteenth Amendment applies.

7

The parties here agree that Plaintiff was a pretrial detainee at the Jail prior to being transferred to the police station pursuant to an investigation for another crime. Defendants argue that, because Plaintiff had not received a *Gerstein* hearing in the case under investigation, Plaintiff was not a pretrial detainee. But the government had established, in his other case, that it had probable cause to detain him. Plaintiff was under the power of the state. The government did not need to show probable cause to detain him further, because it already had the right to detain him. There is no reason to believe that investigating Plaintiff's potential involvement in another crime made him any less a pretrial detainee than he was immediately before and immediately after being transported from the Jail. Plaintiff's detention was not a standard Fourth-Amendment seizure, because even if all of the charges against him being investigated had been dropped, he would not have been free to leave. Defendants have cited no cases that would suggest that an individual can simultaneously be a Fourteenth-Amendment pretrial detainee in one case and a Fourth-Amendment arrestee in another, and their argument ignores the fact that Plaintiff was a pretrial detainee in his other case throughout the investigation of the other offense. The Court finds Defendants' argument unpersuasive and finds that the Fourteenth Amendment applies to Plaintiff's allegations.

Defendants direct the bulk of their arguments to whether Plaintiff has stated a claim under the Fourth Amendment and largely fail to argue directly that Plaintiff has not stated a claim under the Fourteenth Amendment. Defendants briefly argue that Plaintiff's allegations of verbal harassment and mockery by Defendants Olszewski and Freeman do not state a claim, because verbal harassment by a correctional officer does not violate the Constitution. (R. 13, Mot. at 5 (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).) Plaintiff clarifies in response that he is not making a claim of harassment and only includes these statements to show

that Defendants knowingly and intentionally subjected him to the treatment in question. (R. 16, Resp. at 3-4.) Because Plaintiff is not pursuing a claim for mockery or harassment, the Court need not consider such a claim.

Although Defendants frame their arguments in the language of Fourth-Amendment claims, the Court can identify several broader objections that Defendants raise to Plaintiff's claims. First, Defendants argue that Plaintiff did not allege that his exposure to the cold rose to the level of a medical need, or that he informed Defendants that he had a medical need. (R. 13, Mot. at 7.) Second, Defendants argue that as a matter of "common sense" they did not have any control over the cold or Plaintiff's allegedly insufficient clothing. (R. 21, Reply at 4.) Third, Defendants argue that Plaintiff has not articulated the harm that he suffered, beyond mere discomfort. (*Id.* at 5.)

Defendants' other two arguments rely on a misapprehension of the legal standard governing this case. Defendants consistently analogize this case to *Sides v. City of Champaign*, 496 F.3d 820 (7th Cir. 2007). In *Sides*, the plaintiff was detained by police officers on a hot day and was forced to stand against a running car for about an hour. *Id.* at 823. He refused to answer questions, although he did complain that he was dizzy and dehydrated. *Id.* The plaintiff later brought a claim of deliberate indifference to his serious medical needs. Ultimately, the Seventh Circuit concluded that "the Constitution does not require arrests to be conducted in comfort" and that, under the Fourth Amendment's ban on objectively unreasonable seizures, reasonable officers would not have perceived a need for medical attention under the circumstances. *Id.* at 828.

In the present case, because Plaintiff was a pretrial detainee, his constitutional rights flow from the Fourteenth Amendment's Due Process Clause. It is well-settled that the test to

determine whether conditions of pretrial detention constitute a deprivation of liberty without due process of law "is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* "A pretrial condition can amount to punishment in two ways: first, if it is 'imposed for the purpose of punishment,' or second, if the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment.'" *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell*, 441 U.S. at 538-39). Additionally, "the alleged conditions must be objectively serious enough to amount to a constitutional deprivation, and the defendant prison official must possess a sufficiently culpable state of mind," defined as "a purposeful, a knowing, or possibly a reckless state of mind with respect to the defendant's actions (or inaction) toward the plaintiff." *Smith v. Dart*, 803 F.3d 304, 309 & n.2 (7th Cir. 2015) (citation and internal quotation marks omitted).

The Court finds that Plaintiff's allegations are sufficient to state a claim for unconstitutional conditions of confinement. With regard to the objective prong, "[i]ncarcerated persons are entitled to confinement under humane conditions which provide for their basic human needs." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (citation and internal quotation marks omitted). Basic human needs include shelter and heat, and "minimal standards of habitability" include "adequate bedding and protection from cold." *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013). Although exposure to cold may in some instances not suffice as a deprivation of basic human needs, the Seventh Circuit has stated that "the fact-intensive inquiry into the inadequate heating, the severity of the resulting cold, and the duration

of the inmate's exposure to it generally requires the development of a factual record." *Id.* Plaintiff has alleged that he was exposed to extreme cold and wetness for approximately a day; at this stage in the litigation, Plaintiff's allegations sufficiently describe a serious condition depriving him of "basic human needs." *Rice*, 675 F.3d at 664. Defendants may ultimately prevail by showing that Plaintiff suffered only "discomfort" rather than any harm prohibited by the Constitution, but this inquiry will have to wait until the factual record has been developed.

Regarding the subjective prong, Plaintiff has sufficiently alleged that Defendants were aware of the objectively serious conditions he faced and that they deliberately failed to address them. He claims that he informed Defendants Olszewski and Freeman that he was extremely cold and was losing feeling in his feet, and that they did not turn on the heat until just before arriving at the police station. (R. 5, Am. Compl. ¶ 18.) When he was being returned to the Jail, Plaintiff alleges that Defendants Olszewski and Freeman taunted him with references to how cold he was, including stating that the cold cell he had been in overnight was "much cozier than the police car" and that they should have brought him ice cream "to cheer him up." (*Id.* ¶¶ 24-25.) At the police station, Plaintiff claims that he complained of the cold and his lack of blankets and clothing during each shift. (*Id.* ¶ 20.) Taking his allegations as true, the Court finds that Plaintiff has alleged sufficient facts that a jury could conclude that Defendants' inaction was at least reckless, if not deliberate. *Smith*, 803 F.3d at 309 n.2.

Defendants' "common sense" argument is easily dispatched on the pleadings. While it is true that Defendants did not have control over the weather, Plaintiff has alleged particular actions by all relevant Defendants that exacerbated or failed to address the extreme cold he was allegedly subjected to. Plaintiff alleges that Defendants Olszewski and Freeman refused to heat the police car even as Plaintiff was crying, pleading for them to turn on the heat, and informing

11

them that he was losing feeling in his feet. (R. 5, Am. Compl. ¶¶ 18, 24.) At the police station, Plaintiff alleges that he complained of his cold cell and lack of clothing and blankets during each shift and received no response. (*Id.* ¶ 20.) Plaintiff has not brought a Section 1983 suit claiming that Defendants were "liable for the cold," (R. 21, Reply at 5); he has brought this suit alleging that, while he was in their custody, Defendants knowingly and intentionally subjected him to extreme conditions of cold without taking reasonable remedial steps in their power, such as turning on the heat or giving him blankets. As Defendants note, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.* at 5 (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013)).) The Court finds that Plaintiff has met this burden.

Under the Fourteenth-Amendment standard that applies to pretrial detainees, Plaintiff has sufficiently alleged that Defendants exposed him to extreme cold temperatures for no legitimate purpose in a manner that a factfinder could conclude was for the purpose of punishment. Because Plaintiff has adequately stated his claims, Defendant's motion to dismiss is denied.

## II. Statute of Limitations

Although Defendants concede that the two-year statute of limitations was tolled until January 9, 2017, (R. 21, Reply at 6), they argue that Plaintiff's claims against the still-unidentified John Doe defendants are now time-barred, (*id.* at 6-7). Plaintiff argues that the statute of limitations was tolled while the Court conducted a preliminary evaluation of the *pro se* complaint and while the motion for appointment of counsel was pending. (R. 16, Resp. at 9-10.) Plaintiff also argues that the amended complaint would relate back to the original *pro se* complaint. (*Id.* at 12-15.)

Regarding equitable tolling, Plaintiff argues that the statute of limitations was tolled from August 26, 2015, to March 25, 2016. (*Id.* at 9-10.) Plaintiff filed his original *pro se* complaint on August 26, 2015. (No. 15 C 7524, R. 1.) The Court dismissed that complaint on September 22, 2015, and on December 2, 2015, the Court granted Plaintiff's motion for attorney representation and ordered that his new counsel file a second amended complaint. (*Id.*, R. 6, 11.) The Court also ordered that, as the original complaint contained several distinct claims, Plaintiff must bring separate lawsuits to pursue them separately. (*Id.*, R. 11 at 2.) The first counsel that the Court appointed in this case moved to withdraw on March 25, 2016, as he had effectively retired from the practice of law and had taken no actions to pursue Plaintiff's case. (*Id.*, R. 15.) The Court then appointed Plaintiff's present attorney on the same day. (*Id.*, R. 17.)

The Seventh Circuit has held that claims may be equitably tolled while courts preliminarily screen *pro se* prisoner complaints. *Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x 543, 547-48 (7th Cir. 2014) ("The amended complaint had to pass screening before any defendant could be served with process . . . and the delay attributable to screening was outside of [plaintiff's] control and constituted good cause to extend the time for notice."); *see also Paulk v. Dep't of the Air Force*, 830 F.2d 79, 83 (7th Cir. 1987) (explaining that screening tolls statute of limitations). Tolling is also appropriate while a motion to appoint counsel is pending. *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 562 (7th Cir. 1996) ("Other factors which may justify equitable tolling are '. . . that a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon[.]'" (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984))). The ultimate issue is whether "plaintiffs awaited a response that was necessary for them to proceed with their claims (*i.e.*, a response to their motions to appoint counsel or proceed in forma

13

pauperis)" and whether that delay "helped to ensure that [the plaintiff's] ignorance of the identities of the unknown officials would continue." *Bryant v. City of Chi.*, 746 F.3d 239, 243 (7th Cir. 2014) (citation omitted). "Considerations weighing in favor of equitable tolling must be balanced against the possibility of prejudice to the defendants occasioned by the delay." *Donald*, 95 F.3d at 562.

Here, Plaintiff filed his initial complaint well within the statute of limitations, but his ability to pursue his claims, and to identify the individual defendants responsible for his alleged injuries, was interrupted by the Court's screening of his complaint and the delays in appointing counsel to represent him. These factors were outside of Plaintiff's control, and Defendants do not argue that Plaintiff did not diligently pursue his claims or the identities of the proper defendants. Further, although the identities of any remaining John Doe defendants have not yet been determined, the Court does not expect that the delay will have caused them any undue prejudice, although they will be free to raise any such arguments at the appropriate time. For these reasons, the Court finds that equitably tolling the statute of limitations from August 26, 2015, to March 25, 2016, would be appropriate.

However, the Court finds that it is premature to determine whether any future amended complaint naming new individual defendants would relate back to the original complaint. Both parties argue at length regarding the relation-back doctrine, under which claims asserted against newly identified defendants relate back to the date of the original pleading. FED. R. CIV. P. 15(c). In particular, the parties dispute the effect that *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), has had on the Seventh Circuit's "John Doe rule" that naming a John Doe defendant does not stop the running of the statute of limitations. (R. 13, Mot. at 9-11; R. 16, Resp. at 12-15.) The Court observes that this is currently a disputed and contentious question within this Circuit, with

courts split on how to handle John Doe cases after *Krupski*. *Compare, e.g.*, *White v. City of Chi.*, No. 14 cv 3720, 2016 WL 4270152, at *15-20 (N.D. Ill. Aug. 15, 2016) (concluding that "after *Krupski*, the traditional John Doe rule should not be applied to prevent relation back if a plaintiff seeks to determine the identity of the John Doe defendant before the statute of limitations expires but is unable to do so), *with Dandridge v. Cook Cty.*, No. 12-cv-5458, 2013 WL 3421834, at *4-5 (N.D. Ill. July 8, 2013) (concluding that "the Seventh Circuit jurisprudence concerning Rule 15(c)(1) is consistent with the Supreme Court's recent decision in *Krupski*").

The Court declines to wade into this controversial area at this time, when the importance of this question to the present case is nothing more than speculative. It is not clear from the record whether there are in fact any yet-unidentified defendants; Plaintiff's counsel has represented that the present Defendants were those identified in documents he received from the City and Defendants contend that they have produced all the documents in the case. (R. 27, Tr. at 5-6.) At present, there is no amended complaint that might relate back to the original complaint and there are no newly identified individual defendants who Plaintiff seeks to add. As such, the Court may not determine at this time whether adding any such potential defendants would relate back to the original complaint. *See Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) ("Federal courts may not . . . give opinion[s] advising what the law would be upon a hypothetical state of facts." (citation and internal quotation marks omitted)); *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) ("[Courts] do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]."). For these reasons, Defendants' motion to dismiss Plaintiff's claims against the John Doe defendants as time-barred is denied as premature.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 13) is DENIED. If and when Plaintiff files an amended complaint naming any new defendants, Defendants may reassert their arguments at that time. The parties are urged to carefully read this opinion and reconsider their current settlement positions. The settlement conference set for today will be postponed. Instead, the Court will hold a status hearing on May 16, 2017, at 9:45 a.m.

ENTERED: *[signature]*
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 9, 2017**